UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
Michael Grecco Productions, Inc. d/b/a
Michael Grecco Photography, Inc.,

              Plaintiff,               **MEMORANDUM AND ORDER**

        - against -              18 Civ. 386 (NRB)

Function(X) Inc.; and Does 1-10,
inclusive,

              Defendants.
---------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


Plaintiff, a media and photography company run by celebrity photographer Michael Grecco (hereinafter "Grecco"), sued defendant Function(X) Inc., a website operator, alleging that the defendant (and several fictitiously-named individuals believed to be associated with it) committed copyright infringement by displaying two of Grecco's original photographs -- one of Sonny Bono and one of Johnny Depp -- in a commercial context without license or attribution.  In particular, the defendant allegedly featured the Bono photograph on one of its websites in connection with an article titled "10 Famous People from Detroit" and featured the Depp photograph on another of its websites in connection with an article titled "Johnny Depps Evolving Looks Over The Years."  ECF No. 1 at 5.  After the defendant failed to

respond to the complaint or to otherwise defend the action, Grecco sought and received a Certificate of Default from the Clerk of Court. See ECF No. 17. Before the Court is Grecco's motion for default judgment. See ECF No. 18. For the reasons set forth below, that motion is granted; however, as will be explained, Grecco is entitled to less than all of the relief sought in his papers.[1]

## I. Alleged Violations of the Digital Millennium Copyright Act

Grecco alleges that the defendant's infringing conduct included two violations of the Digital Millennium Copyright Act ("DMCA") pertaining to the manipulation of copyright management information. See 17 U.S.C. § 1202. As compensation, he requests statutory damages of $5,000 per violation, for a total damages award of $10,000. See id. § 1203(c)(3)(B) ("[A] complaining party may [seek] to recover an award of statutory damages for each violation of section 1202 in the sum of not less than $2,500 or more than $25,000.").

"Following a defendant's default, all well-pleaded factual allegations [in] the complaint are accepted as true,

---

[1] As a threshold matter, Grecco's motion fully complies with Rule 54(c) of the Federal Rules of Civil Procedure, as all of the relief he now requests was sought in his complaint. See Fed. R. Civ. P. 54(c).

except for those relating to the amount of damages."
Ideavillage Prod. Corp. v. Bling Boutique Store, No. 16-CV-
9039 (KMW), 2018 WL 3559085, at *2 (S.D.N.Y. July 24, 2018).
Still, "prior to entering default judgment, a district court
is 'required to determine whether the [plaintiff's]
allegations establish [the defendant's] liability as a matter
of law."  City of New York v. Mickalis Pawn Shop, LLC, 645
F.3d 114, 137 (2d Cir. 2011) (alterations in original)
(quoting Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir.
2009)).  Even accepting Grecco's well-pleaded allegations as
true, his complaint fails to state a claim for a violation of
the DMCA.

The relevant provisions of the DMCA prohibit any person
from intentionally "remov[ing] or alter[ing] any copyright
management information" or otherwise "provid[ing] copyright
management information that is false," "knowing[] or . . .
having reasonable grounds to know[] that it will induce,
enable, facilitate, or conceal an infringement."  17 U.S.C.
§ 1202(a)-(b).  For purposes of these provisions, copyright
management information ("CMI") is defined to include "[t]he
name of, and other identifying information about, the author"
and/or "the copyright owner of [a copyrighted] work," when
such information is "conveyed in connection with [the] work."
Id. § 1202(c)(2)-(3).  Courts have construed this definition

to encompass photo credits conveyed in connection with copyrighted photographs, whether or not "the CMI [] appear[s] on the work itself." Agence France Presse v. Morel, 769 F. Supp. 2d 295, 305-06 (S.D.N.Y. 2011). The Court assumes (without deciding) the correctness of this construction, which Grecco favors.

Grecco indeed alleges that the defendant published on its websites his copyrighted photographs alongside credit to other sources; specifically, he alleges that the defendant published the Bono photograph with a photo credit to "Getty Images" and the Depp photograph with a photo credit to "Pinterest." But no allegations in the complaint give rise to the inference that the defendant "knowingly" provided a false photo credit or itself "remove[d] or alter[ed]" an existing photo credit. 17 U.S.C. § 1202(a)-(b).

Grecco's allegation that "Defendant's falsification, removal and/or alteration of . . . copyright management information was done . . . intentionally[] [and] knowingly . . ." does not suffice. ECF No. 1 at 8. That assertion is merely "a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Resort must therefore be made to the two allegations of pure fact supplied by Grecco for the

4

apparent purpose of giving rise to the requisite inference.

See id. at 679 ("While legal conclusions can provide the

framework of a complaint, they must be supported by factual

allegations.").  Grecco alleges that (1) "[a]fter a brief

investigation, [he] concluded that Defendant had never

purchased a license for the Bono [photograph] through Getty

Images," and (2) he "has never offered any of [his] content

for licensing through Pinterest."  ECF No. 1 at 5.  Neither

of these allegations "permit the court to infer more than the

mere possibility of [the claimed] misconduct."  Iqbal, 556

U.S. at 679.

As to the first allegation, Grecco merely asserts what

he himself "concluded" following a "brief" investigation; he

thus does not even allege as a factual matter that the

defendant "never purchased a license for the Bono

[photograph] through Getty Images."  ECF No. 1 at 5.  The

distinction is highlighted in Grecco's default judgment

papers, in which he more explicitly qualifies the allegation.

There, he makes plain that he can assert at most that he has

"no *record* of ever licensing the Bono Image to Defendant

through Getty."[2]  ECF No. 18 at 11 (emphasis added).  While

---

[2] This qualification stands in stark contrast to Grecco's renewed, unequivocal assertion that he has "*never* licensed any of [his] Images through Pinterest."  Id. (emphasis added).

such an allegation is not inconsistent with Grecco's theory
of liability, it would give rise to such liability only if a
series of attenuated inferences were borne out.[3]  See Dempsey
v. Vieau, No. 13 CV 6883-LTS, 2016 WL 3351081, at *2 (S.D.N.Y.
June 15, 2016) (finding that a complaint failed to state a
claim where the "[p]laintiff's theories depended on a long
and attenuated series of unsupported inferences").  Where, as
here, "a complaint pleads facts that are merely consistent
with a defendant's liability, it stops short of the line
between possibility and plausibility of entitlement to
relief."  Iqbal, 556 U.S. at 678 (internal quotation marks
omitted).

Grecco's second allegation -- while less obviously
"speculative" than his first, Bell Atl. Corp. v. Twombly, 550
U.S. 544, 555 (2007) -- is similarly inadequate in that it is
"not only compatible with, but indeed [] more likely
explained" with reference to conduct that would *not* entitle
Grecco to the relief he requests, Iqbal, 556 U.S. at 679.

---

[3] Grecco asks the Court to infer that his records search was
comprehensive; that the records themselves are accurate and exhaustive;
that the defendant was not in any way assigned (or led to believe it had
been assigned) a license for the photograph through Getty Images; that
the defendant did not obtain the photograph through Getty Images without
a proper license; that the defendant obtained the photograph from a source
that did not itself attribute the photograph to Getty Images (or that the
defendant knew had falsely attributed the photograph to Getty Images);
and that the defendant decided to add a photo credit to Getty Images in
order to conceal the photograph's true origin (or else republish a false
photo credit to Getty Images knowing it was doing so).  Grecco thus asks
too much.

The allegation that Grecco "has never offered any of [his] content for licensing through Pinterest" does not suggest that the defendant obtained the Depp photograph from some source other than Pinterest and nonetheless elected willfully to publish it with attribution to Pinterest (potentially removing or altering attribution to Grecco in the process); it merely supports the inference that if the defendant obtained the Depp photograph through Pinterest it did so without a license.  ECF No. 1 at 5.  In other words, the most likely explanation for the defendant's publication of the Depp photograph with a photo credit to Pinterest, in view of this allegation, is that the defendant obtained the photograph from Pinterest (or from some source that had itself obtained the photograph from Pinterest) and republished it without a proper license to do so.  A simple search on Pinterest illustrates why this -- and not the stack of inferences requested by Grecco, cf. supra note 3 -- is plausible.  See Boarding Sch. Review, LLC v. Delta Career Educ. Corp., No. 11 CIV. 8921 DAB, 2013 WL 6670584, at *1 n.1 (S.D.N.Y. Mar. 29, 2013) ("The Court generally has the discretion to take judicial notice of internet material."); 23-94 94th St. Grocery Corp. v. New York City Bd. of Health, 685 F.3d 174, 183 n.7 (2d Cir. 2012) (taking judicial notice of a website).  Among the results generated from a search for

"Johnny Depp" (as of the date of this decision) is the Depp photograph at issue here. Compare Pinterest, Johnny Depp, https://www.pinterest.com/search/pins/?q=johnny%20depp&rs=t yped&term_meta[]=johnny%7Ctyped&term_meta[]=depp%7Ctyped (last visited March 6, 2019) with ECF No. 1, Ex. A. No allegations in the complaint permit the Court to infer that the defendant knew the proper CMI associated with the Depp photograph prior to publishing it, and there is thus no basis for the further inference that the publication of the photograph with a photo credit to Pinterest was volitionally dishonest and designed to conceal infringement. Accordingly, Grecco is not entitled to the $10,000 in damages that he seeks, as the complaint does not make out a claim under 17 U.S.C. § 1202. Cf. Agence France Presse v. Morel, 769 F. Supp. 2d 295, 304 (S.D.N.Y. 2011) (finding an adequately stated claim under 17 U.S.C. § 1202 where the complaint "set[] forth a factual basis for alleging that [the defendant] knew the CMI was false and intended to facilitate infringement").

## II. Alleged Violations of the Copyright Act

Grecco next alleges that the defendant violated the Copyright Act by publishing the Bono and Depp photographs, for which Grecco is the "exclusive rights holder," even though Grecco "did not consent to, authorize, permit, or allow in

any manner the said use of" the images.  ECF No. 1 at 4, 6.
There is no question that this claim is adequately stated in
the complaint: Grecco alleges, inter alia, that he is the
exclusive rights holder for two images registered with the
United States Copyright Office under registration numbers VA
1-431-698 and VA 1-736-729; that at no time did he permit the
defendant to publish those images; and that the defendant
nevertheless published the images on its websites without
attribution to Grecco.  See 17 U.S.C. § 501; id. at § 106.
Grecco further alleges that the defendant's infringement was
willful, and on that basis he seeks statutory damages of
$75,000 for the infringing use of the Bono photograph and
$75,000 for the infringing use of the Depp photograph.  See
id. at § 504(c) ("[W]here the copyright owner sustains the
burden of proving, and the court finds, that infringement was
committed willfully, the court in its discretion may . . .
award [] statutory damages . . . of not more than $150,000"
"for all infringements involved in the action, with respect
to any one work."); see Twin Peaks Prods., Inc. v.
Publications Int'l, Ltd., 996 F.2d 1366, 1381 (2d Cir. 1993)
(awarding statutory damages under 17 U.S.C. § 504(c) for each
separate work infringed).  The Court is therefore tasked with
fixing the appropriate damages award in view of Grecco's
allegations -- particularly his allegations of willfulness.

9

See 17 U.S.C. § 504(c) (providing that in cases of *non*-willful infringement, a statutory damages award of "not less than $750 or more than $30,000 as the court considers just" is due for each work infringed).

To the extent possible given the ranges set forth in 17 U.S.C. § 504(c), an award of "statutory damages should bear some relation to actual damages suffered." RSO Records v. Peri, 596 F.Supp. 849, 862 (S.D.N.Y. 1984).  Thus, it is common for courts to tether their assessment of statutory damages to "the [copyright] owner's loss of the fair market value of the license fees he might have exacted of the defendant."  On Davis v. Gap, Inc., 246 F.3d 152, 166 (2d Cir. 2001).  But since "the Second Circuit has made it clear that statutory damages are designed not only to compensate [for] injuries sustained but also to discourage wrongful conduct," Realsongs, Universal Music Corp. v. 3A N. Park Ave. Rest Corp., 749 F. Supp. 2d 81, 87 (E.D.N.Y. 2010) (citing Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 113-14 (2d Cir. 2001)), courts often apply a multiplier to the lost licensing fee amount -- based on the innocence vel non of the defendant's infringement -- in order to arrive at a final damages award, see id. (collecting cases).  This is the approach that Grecco favors.

10

Grecco alleges in his complaint -- and the Court accepts as true -- that "[d]ue to the high quality and limited availability of [his] work[]," he "routinely licenses . . . individual photographs to media outlets for thousands of dollars."  ECF No. 1 at 4.  To substantiate (and elaborate on) that allegation, he submits a sworn declaration, see ECF No. 19, and documentary exhibits, see ECF No. 18, Ex. A.[4]  The declaration attests that the defendant's infringing use of the Bono photograph lasted for approximately four years and that the defendant's infringing use of the Depp photograph lasted for approximately three years.  See ECF No. 19 at 2; accord ECF No. 1 at 9.  The documentary exhibits then reflect that Grecco licenses his photographs -- including the two at issue -- for $13,296 for three years of use and $17,436 for five years of use.  See ECF No. 18, Ex. A; accord ECF No. 1 at 9; cf. Romanowicz, 2018 WL 4762980, at *4.  Consequently, under a legitimate licensing agreement, the defendant would

---

[4] The Second Circuit has held that a court need not exercise its discretion to hold an inquest on damages under Rule 55 of the Federal Rules of Civil Procedure where "there [is] a [sufficient] basis for [assessing] the damages [request] in the default judgment" motion and supporting submissions.  Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997) (internal quotation marks omitted).  In particular, "courts may rely on detailed affidavits or documentary evidence to evaluate the proposed sum." Romanowicz v. Alister & Paine, Inc., No. 17CV8937PAEKHP, 2018 WL 4762980, at *3 (S.D.N.Y. Aug. 3, 2018) (citing Transatlantic Marine, 109 F.3d at 111), report and recommendation adopted, No. 17CIV8937PAEKHP, 2018 WL 4759768 (S.D.N.Y. Oct. 1, 2018).

have had to pay Grecco approximately $15,366 for its use of the Bono photograph and approximately $13,296 for its use of the Depp photograph.   In seeking damages of $75,000 per infringement, Grecco thus requests a multiplier of roughly 4.9 for the Bono photograph and a multiplier of roughly 5.6 for the Depp photograph.

The Court finds that Grecco has adequately alleged that the defendant's infringement was willful and that a meaningful multiplier is therefore warranted: Grecco alleges that (1) upon discovering the defendant's use of the infringing photographs, his counsel sent a cease and desist letter to the defendant on September 25, 2017, requesting that the defendant remove the images from its websites; (2) after the defendant neither responded nor removed the images, Grecco's counsel sent the defendant follow up correspondence of the same sort on November 6, 2017; and (3) after the defendant again failed to respond or remove the images, Grecco instituted the instant lawsuit on January 16, 2018, at which time the images remained published on the defendant's websites.   See ECF No. 1 at 6.   Courts regard such intransigence in the face of cease and desist requests as evidence that the defendant's infringement was willful ab initio.   See, e.g., Broad. Music, Inc. v. Prana Hosp., Inc., 158 F. Supp. 3d 184, 198 (S.D.N.Y. 2016); Realsongs, Universal

Music Corp., 749 F. Supp. 2d at 85, 87; cf. Eastern Am. Trio
Prods., Inc. v. Tang Elec. Corp., 97 F. Supp. 2d 395, 419
(S.D.N.Y.2000) (stating that an innocent infringer must
"prove that it was not aware and had no reason to believe
that his or her acts constituted infringement").

That said, the multipliers of 5.6 and 4.9 proposed by
Grecco dramatically overstate the willfulness evident on this
record.  "Second Circuit case law . . . reflects that courts
in this Circuit commonly award, in cases of non-innocent
infringement, statutory damages of between three and five
times the cost of the licensing fees the defendant would have
paid."  Prana Hosp., Inc., 158 F. Supp. 3d at 199.  Grecco
has not provided a sufficient basis for an award at the "upper
end," let alone the very top, of this "customary" range.  Id.
In particular, the defendant's failure to respond to two cease
and desist letters over a four-month period bears no relation
to the failure of a defendant in a different case to take
remedial action in response to "48 letters/emails, . . . 42
phone calls[,] and four in-person visits" over a two-year
period.  Id. at 198.  In that case, the court found that a
multiplier of "approximately five times the sum of [the
plaintiff's] unpaid licensing fees" -- and certainly not a
multiplier "exceeding [the] customary norm" -- was
"sufficient."  Id. at 198-99.

13

Considering the more modest evidence of willfulness at issue here in the context of the case law in this Circuit, the Court finds that a multiplier of 2.5 is appropriate. See, e.g., Broad. Music, Inc. v. Pamdh Enterprises, Inc., No. 13-CV-2255 KMW, 2014 WL 2781846, at *1, *4 (S.D.N.Y. June 19, 2014) (granting on default judgment an award of "slightly less than three times the unpaid license fees" where defendant continued infringing after plaintiffs "sent twenty-three letters to [defendant], telephoned [defendant] on thirty-four occasions, and visited [defendant] in-person three times"); Broad. Music, Inc. v. 120 Bay St. Corp., No. 09 CIV. 5056 (BMC), 2010 WL 1329078, at *2 (E.D.N.Y. Apr. 5, 2010) (granting on default judgment "an award of damages that [was] approximately three times the annual license fee" where plaintiffs "sent more than 30 letters and made more than 80 phone calls to defendants to notify them of their infringement and to have them either enter into a licensing agreement . . . or cease" the infringing conduct, which "requests were [all] ignored"); Realsongs, Universal Music Corp., 749 F. Supp. 2d at 85, 87 (awarding on default judgment "just under three times the amount of license fees [plaintiffs] would have otherwise been paid" where defendants continued their infringing conduct after plaintiffs "made twenty (20) separate communications through personal visits, letters and

telephone calls to the Defendants"). Accordingly, Grecco is entitled to statutory damages of $38,415 for the Bono photograph and $33,240 for the Depp photograph -- a total award of $71,655.

## III. Injunctive Relief

In addition to monetary damages, Grecco requests a permanent injunction barring the defendant from further infringing use of the copyrighted works at issue in this case. See 17 U.S.C. § 502(a) ("Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant . . . final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."). "A plaintiff seeking a permanent injunction must satisfy a four-factor test: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." Frye v. Lagerstrom, No. 15 CIV. 5348 (NRB), 2018 WL 3178185, at *2 (S.D.N.Y. June 27, 2018) (internal

quotation marks omitted).  All four factors support granting the requested injunction.

First, "because lost sales in the copyright context are difficult if not impossible to measure, courts [routinely] find that infringement inflicts irreparable harm."  Id. at *3 (internal quotation marks omitted).  Second, the defendant's failure to cease its infringing conduct even after being put on notice by Grecco "suggests that [the defendant] may continue to engage in infringing activities unless enjoined from doing so by the Court," rendering money damages "inadequate to account for future harm."  Id.  Third, in assessing the balance of hardships, "it is axiomatic that an infringer cannot complain about the loss of ability to offer its infringing product."  Id. (alteration and internal quotation marks omitted).  Fourth, and finally, "issuing an injunction would be consistent with the public interest because the public has a compelling interest in protecting copyright owners' marketable rights to their work."  Id. (internal quotation marks omitted).

Accordingly, Grecco is entitled to the requested injunction.

16

## IV. Attorneys' Fees and Costs

Finally, Grecco asks the Court to exercise its discretion under 17 U.S.C. § 505 to award reasonable attorneys' fees and costs to the prevailing party in a copyright infringement action. "There is no precise rule or formula for making these determinations." Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994) (internal quotation marks omitted). But "[t]he Second Circuit has held that it is appropriate to [grant such an award] where the infringement was willful." Prana Hosp., Inc., 158 F. Supp. 3d at 200 (citing Kepner-Tregoe, Inc. v. Vroom, 186 F.3d 283, 289 (2d Cir. 1999)). "The Court, therefore, turns to the reasonableness of the award that plaintiffs request." Id.

As to fees, Grecco seeks $2,000 -- the equivalent of eight hours of billable work conducted at a rate of $250 per hour. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 186 (2d Cir. 2008) ("The most useful [metric] for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." (internal quotation marks omitted)). In determining the reasonableness of both the hours purportedly spent on a lawsuit and the rate charged, a court may rely on the awards

"approved in other cases in the District" and on "its own familiarity with prevailing" market standards.  Myeress v. Elite Travel Grp. USA, No. 18-CV-340 (AJN), 2018 WL 5961424, at *4 (S.D.N.Y. Nov. 14, 2018) (internal quotation marks omitted).

Eight hours is a reasonable amount of time for a lawyer to have spent on this litigation, which -- in addition to the filings reflected on the docket -- involved several months of settlement negotiations that (reportedly) nearly resulted in a consummated agreement.  See, e.g., id. at *5 (finding that seven hours was a reasonable amount of time to have spent on a copyright case, which "essentially only [required counsel to prepare and file a] Complaint, motion for default judgment, and accompanying materials"); Romanowicz, 2018 WL 4762980, at *7 (finding that ten hours was a reasonable amount of time to have spent on a copyright case which resulted in a default judgment but required counsel to prepare for an inquest on damages).  So too is an hourly rate of $250 a reasonable figure.  "A review of cases in this district and in the Eastern District of New York suggests that courts [routinely] approve[] associate rates of $350, and up to $500 for partners in copyright cases."  Myeress, 2018 WL 5961424, at *5 (finding a rate of $350 per hour to be reasonable); see Romanowicz, 2018 WL 4762980, at *7 (same) (collecting cases).

As to costs, Grecco seeks reimbursement for $400 in court filing fees and $95.95 in process service fees. "Such costs are reasonable." Myeress, 2018 WL 5961424, at *5 (awarding costs of $500, representing "the court filing fee, the service fee, and the cost of certified mail"); Romanowicz, 2018 WL 4762980, at *7 (awarding costs of $519, representing "the $400 filing fee charged by this Court, $104 for documented service of process expenses, and $15 for certified mail"). "[T]here is no doubt that [these] were legitimate expenses [necessary to Grecco's prosecution of] the case." Zimmerman v. Portfolio Recovery Assocs., LLC, No. 09 CIV. 4602 PGG, 2013 WL 6508813, at *13 (S.D.N.Y. Dec. 12, 2013).

Accordingly, Grecco is entitled to the $2,495.95 in fees and costs that he seeks.

                    *            *            *

Subject to the foregoing qualifications, the plaintiff's motion for default judgment is hereby granted. The plaintiff is granted damages for violations of the Copyright Act in the principal amount of $71,655, plus post-judgment interest to be calculated (from the date of entry of the judgement) by the Clerk of Court at the rate set forth in 28 U.S.C. § 1961. The plaintiff is further granted $2,495.95 in reasonable fees and costs. Additionally, the defendant is immediately and

permanently enjoined from making infringing use of the copyrighted works at issue in this case.

The Clerk of Court is respectfully directed to enter final judgment in favor of the plaintiff in accordance with the terms of this Memorandum and Order and to terminate the motion currently pending at docket entry 18.

**SO ORDERED.**

Dated:    New York, New York
          March _//_, 2019

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE